UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD GAYDOS, | : | |
| Plaintiff, | : | Case No.: |
| VS. | : | 3:14CV636 AWT |
| SIKORSKY AIRCRAFT, INC., | : | |
| Defendant. | : | MAY 5, 2014 |

Jury Trial Demanded

## COMPLAINT

Plaintiff, Edward Gaydos, by and through his attorneys, Sabatini and Associates, LLC, complaining of the defendant, respectfully alleges:

### PARTIES

1. Plaintiff is a citizen of the State of Connecticut residing in the Town of Trumbull.

2. Defendant Sikorsky Aircraft, Inc. was and is a Delaware corporation with its principal place of business located at 6900 Main Street, Stratford, Connecticut 06615.

3. At all times material, plaintiff was an eligible employee as that term is defined by the FMLA.

4. At all times material, defendant employed fifty or more employees at plaintiff's former worksite for twenty or more weeks in 2013 and 2014 in an industry affecting interstate commerce. Accordingly, defendant is an employer covered by the FMLA.

### JURISDICTION AND VENUE

5. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C.

§1343 and this action is brought pursuant to: the Family Medical Leave Act of 1993 (FMLA)

6. This Court has personal jurisdiction over the Parties and venue is proper under 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

7. Plaintiff was employed by the defendant.

8. Plaintiff was employed by the defendant as a second shift supervisor.

9. In October 2011, plaintiff applied for and received family leave under the FMLA.

10. At the time of the October 2011 application for family leave, plaintiff's parents were suffering from long term illnesses and required constant care and supervision.

11. Plaintiff's father had Parkinson's disease.

12. Plaintiff's mother has Alzheimer's disease.

13. Plaintiff was required to care for his parents twice a week on average.

14. Plaintiff cared for his father up to his father's death in December of 2012.

15. Plaintiff continues to care for his mother.

16. After receiving approval for family leave, defendant, by and through one or more managerial employees, were critical of plaintiff's family leave absences.

17. A managerial employee stated in reference to plaintiff's family leave absences: "This is unacceptable. You need to get more help. We can't continue working like this."

18. In June 2012, plaintiff's manager, Gary Byrd, notified the plaintiff during

an evening supervisors meeting that he was being removed as a floor supervisor and was being moved into a new position as an ACE coordinator.

19. This job transfer was done without any prior discussion with the plaintiff.

20. This job transfer was done without the consent of the plaintiff.

21. Plaintiff asked Byrd what his new job duties would consist of.

22. Byrd responded by stating: "We don't know yet, We're working out the details."

23. Plaintiff was moved to first shift to train with a managerial employee Julio Rodriguez.

24. Julio Rodriguez had limited time to train the plaintiff.

25. The job that the defendant transferred the plaintiff to required advanced computer and analytic skills which at the time of the transfer plaintiff did not fully possess.

26. Plaintiff contacted defendant's department of human resources and spoke with human resources manager Mike Gitto.

27. Plaintiff discussed the job transfer and the new job with Gitto.

28. Gitto told the plaintiff that defendant should not have moved plaintiff from a supervisor position because it made him ineligible for bonus programs.

29. Gitto told the plaintiff that he had explained to Byrd and Rodriguez (prior to plaintiff's move) that plaintiff should not be moved from a supervisor position because it made him ineligible for bonus programs.

30. Gitto told the plaintiff that despite his use of family leave, he was to be treated no different than if he was not using FMLA with regard to raises, bonuses,

promotions, etc.

31. Gitto confirmed to the plaintiff that he would make it clear <u>again</u> to Byrd and Rodriguez that he was to be treated no differently than other employees who were not exercising their rights under the FMLA.

32. A few days following plaintiff's communications with Gitto, plaintiff was placed in a job position where he was supervising two (2) employees in production control.

33. In April 2011 and prior to requesting family leave, plaintiff received a 2.8% salary raise and a bonus of $3000.

34. In April 2013, plaintiff received a 1.5% salary increase with a $3000 bonus despite the fact that he received a favorable job performance review and that the blade division that the plaintiff was working in had its best year in 20 years.

35. Upon information and belief, similarly situated supervisors received greater bonuses and/or raises than the plaintiff received.

36. Plaintiff requested a "comp" day after he had worked a holiday weekend.

37. In response to the "comp" request, Byrd stated: "I need to look into this since technically you're only working a three day week."

38. In reviewing plaintiff's job performance, Byrd commented that it was difficult to evaluate the plaintiff because he was only at work part-time.

39. Roberto Rodriguez stated in one or more managerial meetings that he hated the fact that the plaintiff was using family leave.

40. In January 2014, there were three (3) blades division supervisors who had less seniority than the plaintiff.

41. One of the less senior supervisors, John Horoshak, actually wanted to take a retirement/severance package and retire from the defendant.

42. Defendant refused to satisfy Horoshak's request.

43. On February 27, 2014, defendant terminated plaintiff's employment.

44. Upon information and belief, Roberto Rodriguez was involved in the decision-making process to terminate plaintiff's employment.

45. Upon information and belief, defendant relied upon information provided by Roberto Rodriguez in deciding to terminate plaintiff's employment.

46. Upon information and belief, defendant relied upon information provided by Byrd in deciding to terminate plaintiff's employment.

47. Roberto Rodriguez had managed the plaintiff for a period of time.

48. Roberto Rodriguez worked as a manager in defendant's blade division and reported directly to the general manager – Alan Walling.

49. After plaintiff was terminated, Rodriguez and an employee named Mike Tabone discussed a personnel move to a 2nd shift supervisor position and that a requisition was going to be place for such a move.

50. Any and all non-discriminatory excuses to be offered by the defendant, if any, to explain plaintiff's termination would be a pretext to mask unlawful FMLA discrimination/retaliation.

51. Plaintiff's exercise of rights under the FMLA was a motivating factor in the defendant's decision to terminate plaintiff's employment.

52. Plaintiff was qualified for the supervisors job he held with the defendant.

53. Plaintiff performed his job at or above a satisfactory level.

## FIRST COUNT
### (FMLA Discrimination/Retaliation)

1. Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

54. Plaintiff invoked his right to FMLA-qualifying leave.

55. Defendant, by and through its agents, retaliated against the plaintiff for the exercise of his rights under the FMLA in one or more of the following ways:

   (a) by terminating plaintiff's employment;

   (b) by treating the plaintiff adversely different from one or more similarly situated employees;

   (c) by transferring the plaintiff to a non-supervisory position.

56. As a direct and proximate result of defendant's retaliation/discrimination, plaintiff suffered and sustained damages, including but not limited to: lost wages, lost employee/retirement benefits, and other expenses and financial losses that would not otherwise have been incurred.

57. Some or all of defendant's actions have been willful.

**DEMAND FOR RELIEF**

WHEREFORE, plaintiff prays for appropriate compensatory damages including: compensatory damages; damages for back pay, front pay, bonuses, personal days; liquidated damages; punitive damages; reasonable attorneys' fees; costs; interest; job reinstatement; prejudgment interest; for an injunction requiring the removal of any and all adverse information contained in plaintiff's personnel file; an injunction requiring the defendant to promote the plaintiff; for a trial by jury; and for all other just and proper relief.

DATE: May 5, 2014

James V. Sabatini, Esq.
Fed. No.: CT 19899
SABATINI AND ASSOCIATES, LLC
1 Market Square
Newington, CT 06111
Tel. No.: (860) 667-0839
Fax No.: (860) 667-0867
Email: sa@sabatinilaw.com

ATTORNEY FOR PLAINTIFF